UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ANDERSON LAW OFFICE, LLC, *et al.*, | ) | Case No.: 1:09 CV 1909 |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| ESQUIRE DEPOSITION | ) | |
| SERVICES, LLC, | ) | |
| | ) | |
| Defendant | ) | <u>ORDER</u> |

Currently pending before the court is Defendant Esquire Deposition Services, LLC's ("Esquire" or "Defendant") Motion For Partial Summary Judgment. (ECF No. 23.) For the following reasons, the court grants in part and denies in part the Motion.

**I. FACTS AND PROCEDURAL HISTORY**

On December 21, 2009, Plaintiffs Anderson Law Office, LCC, Henry Symanski, and Phyllis Hutchins ("Plaintiffs") individually and on behalf of all others similarly situated, commenced a lawsuit against Defendant, seeking damages, declaratory, and injunctive relief for Defendant's deceptive consumer and trade practices. Plaintiffs hired Defendant, a licensed court reporting company, and entered into an express contract "for its services in attending, recording, and transcribing depositions, hearings, trials and other proceedings." (Compl. ECF No. 1, ¶ 3.) Upon entering into the contract, Plaintiffs believed that "Defendant[ ] [would] charge a flat fee ("appearance fee" or "per diem") for attending proceedings . . . and through hired or contracted licensed court reporters [would] charge a per page fee to transcribe the testimony related to such

proceedings." (*Id.* at ¶ 17.) Plaintiffs allege that the "per page fee" found in the contract did not apply to the transcript's word index, "a listing of words appearing in the transcript and a designation of the place in the transcript where the words appear." (*Id.* at ¶ 20.)

Plaintiffs claim that although "Defendant recognize[d] the difference between a transcript of a proceeding and the [word] index to that transcript . . . Defendant applied a different standard . . . and charged them for the index as if it were the transcript rather than what it [was]: a computer-generated attachment to the transcript." (Am. Compl., ECF No. 19, ¶ 22.) Further, Plaintiffs allege that "Defendant double-charged [them] for the [word] index, and did so at the improper transcription rate, meaning that it not only imposed the charge twice, but did so at an illegal rate." (*Id.* at 24.)

On August 13, 2009, Plaintiffs commenced a class action lawsuit to include "all persons and entities in Ohio who or which, during the six years prior to the filing of this action and during the pendency of this action . . . paid for a word index for a transcript at the per page rate charged by Defendant for transcription services." (Compl., ECF No. 1, ¶ 26.)

On December 21, 2009, Plaintiffs filed an amended complaint asserting three claims for: (a) deceptive trade practices in violation of the Ohio Deceptive Trade Practice Act ("ODTPA"), O.R.C. § 4165.02(A)(7); (b) unfair and deceptive consumer sales practices in violation of Ohio Consumer Sales and Practices Act ("OCSPA"), O.R.C. §§ 1345.02(A), (B)(1), (B)(2) and (B)(6); and (c) unjust enrichment. (Am. Compl., ECF No. 19.)

On February 23, 2010, Defendant filed this Motion For Partial Summary Judgment. First, Defendant argues that Plaintiffs' ODTPA claim is meritless because Defendant did not misrepresent their product in a manner that induced Plaintiffs to use their product. (*Id*.) Second, Defendant asserts that Plaintiff Anderson Law Office's OSCPA claim is deficient because only a "natural

person" has standing under the Act. (*Id.*) Third, Defendant argues that summary judgment should be granted on Plaintiffs' unjust enrichment claim because such claim is precluded by the existence of the parties' contract. (*Id.*)

On March 25, 2010, Plaintiffs filed their Brief In Opposition. (ECF No. 27.)

## II. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) governs summary judgment motions and provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. . . .

In reviewing summary judgment motions, this court must view the evidence in a light most favorable to the non moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153 (1970); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943-44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most cases, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [nonmoving party] is entitled to a verdict." *Id.* at 252. However, "[c]redibility judgments and weighing of the evidence are prohibited during the consideration of a motion for summary judgment." *Ahlers v. Scheibil*, 188 F.3d 365, 369 (6th Cir. 1999). The moving party has the burden of production to make a prima facie showing that it is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986). If the burden of persuasion at trial would be on the nonmoving party, then the moving party can meet its burden of

production by either: (1) submitting "affirmative evidence that negates an essential element of the nonmoving party's claim"; or (2) demonstrating "to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id*.

If the moving party meets its burden of production, then the nonmoving party is under an affirmative duty to point out specific facts in the record which create a genuine issue of material fact. *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992). The nonmovant must show "more than a scintilla of evidence to overcome summary judgment"; it is not enough to show that there is slight doubt as to material facts. *Id*. Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)).

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

Fed. R. Civ. P. 56(e).

### III. LAW AND ANALYSIS

#### A. Ohio Deceptive Trade Practices Act

The ODTPA prohibits trade practices that would confuse or deceive the public regarding goods and services. O.R.C. § 4165.02(A).

Plaintiffs contend that Defendant violated ODTPA § 4165.02(A)(7) when Defendant "misrepresented its goods and/or services as being something other than what they were . . . [by] charging [Plaintiffs] for an index as if it were a transcript." (Am. Compl., ECF No. 19, ¶ 35.)

In response, Defendant makes two arguments. First, Defendant argues that, as a matter of law, any representations regarding payment, made after services were rendered, cannot be the basis for an ODTPA claim. (Mot. Summ. Judg., ECF No. 23.) Defendant contends that the Act governs misrepresentations that are made prior to the customer's request for goods or services and that induce a consumer to purchase goods or services. (*Id*.) Defendant asserts that Plaintiffs have failed to present any evidence of misrepresentations by Defendant that Plaintiffs relied on in purchasing Defendant's services. (*Id*.) Second, Defendant asserts that evidence stemming from a billing statement printed two years after Plaintiffs paid Defendant is insufficient to show that these misrepresentations were present on the actual invoices. (*Id*.)

Plaintiffs reply that Defendant misconstrues their Complaint. (Opp. Mot. Summ. Judg., ECF. No. 27.) The Complaint alleges that the misrepresentation was made within Defendant's billing statements, not in any solicitation of Plaintiffs' patronage. (*Id*.) Plaintiffs relied on this misrepresentation by paying for a standard transcript word index believing the additional costs were part of the standard transcript itself. (*Id*.)

In deciding whether summary judgment should be granted on Plaintiffs' ODTPA claims, the court must address the following issues: (1) whether a deceptive trade practice needs to be before the rendered service and (2) whether the billing statement is sufficient evidence to show Defendant's deceptive trade practice.

### 1. Temporal Element

Neither the language of § 4165.02(A)(7) nor case law supports the conclusion that a deceptive trade practice must be before a person provides his or her services or goods.

Section 4165.02(A)(7) states, in pertinent part: "A person engages in a deceptive trade

practice when. . . the person . . . [r]epresents that goods or services have. . . characteristics, ingredients, uses, benefits, or quantities that they do not have." This section contains no language regarding when the deceptive practice needs to take place. The section requires only that a defendant commit the deceptive practice.

None of the case law cited by Defendant requires a temporal element. In *Mafcote, Inc. v. Genatt Assoc.*, Inc., No 1:04-cv-853, 2007 WL 527870 at *11, the court granted the defendant's summary judgment motion because plaintiff could not establish that any specific representations were made prior to the attainment of the service. *Id.* Yet the court's focus on representations made prior to services rendered was based on the plaintiff's own factual allegations underlying its claim that placed the misrepresentation before service was given. *Id.* *Mafcote* does not establish a temporal requirement that the deceptive trade practice must take place before the rendering of goods or services. Further, in *Ultimax Inc. v. Mercedes-Benz U.S.A.*, LLC, No. 2:06-CV-951, 2008 WL 974036 (S.D. Ohio Apr. 8, 2008), the court granted summary judgment for the defendant because the plaintiff did not present any evidence to meet the five-prong standard of an ODTPA false advertisement claim. *Id.* at *10. The court did not mention or even imply that there was a temporal element required for a successful claim.

Plaintiffs allege that Defendant deceptively charged the standard transcript word index as if it was part of the transcript. Here, Plaintiffs' ODTPA claim that Defendant's misrepresentation was in the *bill*, not in inducing Plaintiffs to purchase its services, is permissible. The ODTPA requires only evidence establishing the existence of a misrepresentation concerning the service. Further, case law addressing this issue does not impute a temporal requirement to an ODTPA claim. For the foregoing reasons, Defendant's Motion for Summary Judgment is denied.

-6-

2. Billing Statement as Sufficient Evidence

Defendant argues that Plaintiffs can not use representations made in the billing statement to show that it committed a deceptive trade practice prior to performing its services. As stated above, the ODTPA does not require the misrepresentation to occur before purchase of services. Plaintiffs argue that Defendant's misrepresentation occurred in it billing Plaintiffs transcription rates for word indexes. Plaintiffs argue that they relied to their detriment on the misleading billing statement by paying Defendant the incorrect fee for word indexes. Whether the billing statement reflects the alleged misrepresentations made by Defendant is an issue which must be determined by the trier of fact.  Defendant's motion is denied on this basis.

Further,  Defendant argue that Plaintiff Symanski could not have been deceived by the billing statement when Symanski reimbursed Plaintiff Anderson Law Office for Defendant's cost a month after filing this lawsuit. (*Id*.)   The latter argument lacks merit because Plaintiff Symanski, as a client of Plaintiff Anderson Law Office, was required to reimburse the law firm for its accrued litigation costs including the Defendant's alleged overcharge. Plaintiff Symanski's contractual obligation to pay Plaintiff  Anderson Law Office, acting on behalf of and as Symanski's agent, does not negate both Plaintiffs' ODTPA claims.

### B. Ohio Consumer Sales Practices Act

The OCSPA prohibits a supplier from committing an unfair, deceptive, or unconscionable act or practice in connection with a "consumer transaction". O.R.C. §§ 1345.02-.03. Section 1345.09 provides consumers with a  private cause of action for violations of the statute. O.R.C. § 1345.09(D) ("Any consumer may seek a declaratory judgment, an injunction, or other appropriate relief against an act or practice that violates this chapter.").  For a consumer to have standing under the OSCPA,

...

the underlying transaction must be within the scope of the Act. Thus, an OCSPA analysis consists of several interrelated questions about the nature of the transaction and the parties, such as whether the transaction itself is a "consumer transaction" under the Act, *See Williams v. Edwards*, 717 N.E.2d 368 (Ohio App.3d 1998)(A "consumer transaction" arose where a contractor doing road work contracted with homeowners to dump fill dirt on their property in exchange for performing certain improvements to the property); *Lawson v. Mack*, 1991 Ohio App. LEXIS 1752 (6th Dist. 1991)(A contract for home improvement/remodeling services was a consumer transaction as it involved the sale of goods and services for personal, family or household purposes), and relatedly, whether the party suing possesses the requisite standing. *See SWA, Inc. v. Straka*, 2003 Ohio 3259 (2003) (Nursing home patient's daughter was not a consumer, as she admittedly was not a party to the contract for care and was not the consumer involved in the contract because she did not sign the agreement; simply because she was sued by the nursing home corporation did not mean she engaged in a "transaction".); *D.A.N. Joint Venture III, LP v. Legg*, 2004 Ohio 2805 (2004)(Since the individuals were not consumers because they were not engaged in a consumer transaction as they were merely witnesses to the contract, they could not avail themselves of the remedies for consumers under the Act). Here, the court must determine whether the transaction between Plaintiff Anderson Law Office and Defendant meets the Act's "consumer transaction" definition and further whether Plaintiffs have standing to bring this claim.

Section 1345.01(A) of the OSCPA defines "consumer transaction" as a "sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an *individual* for purposes that are primarily personal, family, or household, or solicitation to supply any of these things." O.R.C. § 1345.01(A)(emphasis added). This section does

not provide a definition for the term "individual".

Neither party contests that Defendant's services meet the definition of "consumer transaction." Yet Defendant contends that Plaintiff Anderson Law Office is not an "individual" within § 1345.01(A)'s "consumer transaction" definition. (Mot. Summ. Judg., ECF No. 23.) Defendant points to several state court cases defining "individual" as meaning "natural persons" or "human beings." (*Id.*) *See Toledo Metro Fed. Credit Union v. Ted Papenhagen Oldsmobile, Inc.*, 381 N.E.2d 1337 (Ohio Ct. App. Mar. 17, 1978) (It is apparent from this language that the drafters of the uniform act intended the word "individual" to mean a "natural person," and not a corporation). *See also Watkins & Son Pet Supplies v. IAMS Co.*, 107 F.Supp. 2d 883, 893-4 (S.D.Ohio 1999)("The term 'individual' has been interpreted to mean a natural person.").

Plaintiffs urge the court to fulfill the Act's purpose of protecting customers by interpreting the term "individual" broadly. (*Id.*) (citing to *Elder v. Fischer*, 129 Ohio App.3d 209, 214 (1st Dist. 1998)("The purpose of the CSPA is to protect consumers from 'unscrupulous suppliers.'"). Plaintiff Anderson Law Office must meet the definition of "individual" under § 1345.01(A). Because the OSCPA does not provide a definition for the term "individual", Plaintiffs argue that the court should interpret the term "individual" broadly to include entities like law associations.

The Supreme Court of Ohio has rejected a broad construction of this term. In *Culbreath v. Golding Enters.*, 114 Ohio St. 3d 357, 362 (Ohio 2007), the court defined § 1345.01(A)'s "individual" as a "single person or human being, in contrast to a group or institution." *Id*. at 362 (citing to Webster's Third New International Dictionary (1986) 1152). The court looked not only at the common meaning of the term, but also at the section's other definitions. The court concluded that if the legislature wanted to include entities under "consumer transaction" then the legislature would

have used the term "person", which includes in its definition associations and legal entities. *Id*. at 362-363. Further, the court reasoned that a narrow reading of "individual" is consistent with the rest of the definition for consumer transaction because it applies only to those transactions of "personal, family, or household" goods, which tend to be made by "natural persons" not entities. *Id.* at 363 (quoting O.R.C. §1345.01(A)). Finally, the court rejected the argument that a law firm should be considered an "individual" under the Act stating "we have declined to recognize [plaintiff's] right to maintain an action under the OCSPA [because] the law firm is not an 'individual' for purposes of the act." *Id*. Based on the *Culbreath* decision, the court determines that Plaintiff Anderson Law Office does not possess standing under the OCSPA.

Plaintiffs make an additional argument that this court should look to §1345.09(D), and not § 1345.01(A) for purposes of standing. Plaintiff Anderson Law Office argues that it meets the definition of "consumer" under § 1345.01(D). (Opp. Summ. Judg., ECF No. 27.) *See* O.R.C. § 1345.01(D)(defining consumer as "a person who engaged in a consumer transaction with a supplier"). Yet Plaintiffs' argument minimizes the importance of § 1345.01(A) in understanding the provisions Defendant allegedly violated – §§ 1345.02 and 1345.03 (Am. Compl., ECF No. 19.) These two sections set forth violations of the Act and use § 1345.01(A)'s "consumer transactions" in their definitions. Section 1345.02(A) provides that "[n]o supplier shall commit an unfair or deceptive act or practice in connection with a *consumer transaction*." (emphasis added). Section 1345.03(A) states, "[n]o supplier shall commit an unconscionable act or practice in connection with a *consumer transaction*." (emphasis added). A party bringing a § 1345.09(D) action for violations of §§ 1345.02 and 1345.03 must show that the illegal conduct is connected with "consumer transaction". *See also*, *Culbreath v. Golding Enters.*, 114 Ohio St. 3d 357, 362 (Ohio 2007). Thus, Plaintiffs must meet §

-10-

1345.01(A) definition of "consumer transaction" in order to show Defendant violated §§ 1345.02 and 1345.03. Contrary to Plaintiffs' argument, the court would not look to §1345.09(D) only, but also to §§ 1345.01(A), 1345.02, and 1345.03.  Because, as a legal association, Plaintiff Anderson Law Office is not an "individual" under the Act, it does not meet the Act's § 1345.01(A) "consumer transaction" definition. Defendant's motion for summary judgment on this claim is granted.

### C. Unjust Enrichment

In their Amended Complaint, Plaintiffs assert an unjust enrichment claim pleading that Defendant was "unjustly enriched at the expense of the Plaintiffs" by their deceptive practices. (Am. Compl., ECF No. 19.) Defendant attacks this claim arguing that Plaintiffs cannot plead an unjust enrichment claim when an expressed contract governs the dispute. (Mot. Summ. Judg., ECF No. 23.) Plaintiffs respond in two ways. First, Plaintiffs argue that the relevant word index charge is separate from the contract because it was not included in their agreement with Defendant. (Opp. Summ. Judg., ECF No. 27.) Second, Plaintiffs assert that at this stage in the litigation, their unjust enrichment claim can be pled as an alternative form of relief to their contractual causes of action. (*Id. See* Fed. R. Civ. P. 8.) Defendant counters both arguments by pointing to the existence of the contract. (Supp. Mot. Summ. Judg., ECF No. 33.) Defendant argues that Plaintiffs can never assert an unjust enrichment claim when an express contract exists. (*Id.*)

Under the doctrine of unjust enrichment, the law "implies a promise to pay the reasonable value of services rendered where one confers a benefit upon another without receiving just compensation for those services." *Weiper v. W.A. Hill & Assoc.*, 661 N.E.2d 796, 804 (Ohio Ct. App. 1995); *Norton v. City of Galion*, 573 N.E.2d 1208, 1209 (Ohio 1989).This doctrine seeks to compensate an injured party  "in absence of an express contract or a contract implied in fact."

*Wuliger v. Mfrs. Life Ins. Co.*, 567 F.3d 787, 799 (6th Cir. 2009) (reversing grant of summary judgment to receiver on unjust enrichment theory where receiver based claim on express contracts)(emphasis omitted). Thus, the existence of an express, valid contract bars an injured party's unjust enrichment claim. *Id*.

Yet this general bar does not prevent a plaintiff, within his or her complaint, from pleading this relief as an alternative to any contractual causes of action. *See* Fed. R. Civ. P. 8 (permitting a plaintiff to plead any "relief in the alternative"). Thus, Plaintiffs' unjust enrichment claim survives summary judgment on this basis.

Plaintiffs' additional response implores the court to consider its unjust enrichment claim as an independent claim not covered by their contractual agreement with Defendant. Plaintiffs contend that there was no agreement regarding payment for word indexes for the standard transcript. Indeed, Plaintiffs allege that Defendant failed to disclose the standard transcript word index fee as part of its services.(Am. Compl., ECF No. 19.) Defendant contests this assertion, pointing to various statements made by Plaintiffs that, it alleges, shows that the word index fee was part of the agreement. (Mot. Summ. Judg., ECF No. 23.) Plaintiffs respond that any agreement between the parties was regarding the standard transcripts, not word indexes for these transcripts. (Opp. Summ. Judg., ECF No. 27.)

Plaintiffs second response raises a genuine issue regarding whether the parties' agreement covered the standard transcript word index. If the contract governs the word index charge then Plaintiffs cannot recover under this theory. Conversely, if the word index is outside the contract's scope, then Plaintiffs' unjust enrichment claim remains viable. *See Arlington Video Productions, Inc. v. Fifth Third Bancorp*, 2008 U.S. Dist. LEXIS 51196 (S.D. Ohio). Because reasonable jurors could find, by the preponderance of the evidence, that Plaintiffs are entitled to this relief if the contract did

not cover the word index Plaintiffs have met their burden against summary judgment. Defendant's motion for summary judgment on their unjust enrichment claim is denied.

## IV. CONCLUSION

For the foregoing reasons, the court grants Defendant's Motion For Partial Summary Judgment in regard to Plaintiffs' OCSPA claim and denies said Motion in regard to Plaintiff's ODPTA and Unjust Enrichment claim. (ECF No. 23.)

IT IS SO ORDERED.

/S/ SOLOMON OLIVER, JR.
CHIEF JUDGE
UNITED STATES DISTRICT COURT

March 31, 2011